UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SHAMECA BURT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-234-TRM-SKL |
| | ) |
| TENNESSEE DEPARTMENT OF CHILDREN | ) |
| SERVICES COMMISSIONER BONNIE | ) |
| HOMMRICH, CHILD PROTECTIVE | ) |
| SUPERVISOR BARBARA MASON | ) |
| MARSHALL, SOCIAL WORKER JACKIE | ) |
| THOMAS, STATE ATTORNEY RAY NEAL | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

This case is filed pro se and without payment of filing fees by Plaintiff Shameca Burt ("Plaintiff"). Plaintiff claims the defendants removed her children from her custody and subsequently terminated her parental rights without affording her appropriate due process. Plaintiff filed her original complaint on October 1, 2018, naming the Tennessee Department of Children's Services ("DCS") as the only defendant [Doc. 2].[1] On October 17, 2018, the undersigned entered an order outlining clear deficiencies in the complaint and requiring Plaintiff to file an amended complaint within 14 days [Doc. 9]. Plaintiff was warned that any failure to state a claim in a timely-filed amended complaint would result in the dismissal of this action in accordance with 28 U.S.C. § 1915(e)(2), and the Clerk was ordered to withhold the issuance of any summons pending review of Plaintiff's amended complaint [*id.* at Page ID # 22-23]. Plaintiff

---

[1] Whether Plaintiff named DCS, DCS Commissioner Bonnie Hommrich, or both, as defendants is not clear in the original complaint [Doc. 1].

filed her first amended complaint on November 1, 2018 [Doc. 11].[2] In addition to DCS, the amended complaint names four individual defendants: Commissioner Bonnie Hommrich, Child Protective Services Supervisor Barbara Mason Marshall, Social Worker Jackie Thomas, and State Attorney Ray Neal[3] (collectively, "Defendants").

Having reviewed the amended complaint as required by 28 U.S.C. § 1915(e)(2), and for the following reasons, I **RECOMMEND** this case be **DISMISSED** prior to the issuance of any summons.

I. BACKGROUND

The amended complaint adds much more detail regarding the factual basis for Plaintiff's claims. Specifically, Plaintiff alleges that an incident occurring on May 2, 2002, set a chain of events in motion which eventually caused her to lose custody of her children, including four she had at that time, and five more born over the course of the next five years. She claims on that day, her then two-year-old son burned his own foot by putting it under extremely hot water [Doc. 11 at Page ID # 32, ¶ 35]. She called his pediatrician, who asked her to bring her son in the next day, and in the meantime she applied butter and Vaseline [*id.* at Page ID # 33, ¶ 36]. She was eight months pregnant with her fifth child at the time, and her pregnancy was considered high risk [*id.* at Page ID # 32, ¶ 35]. She claims she was resting when her son was injured [*id.*].

Plaintiff took her son to the hospital the following day, as instructed. After treating the

---

[2] Plaintiff also filed a motion for an extension of time to file her amended complaint [Doc. 10]. While the 14th day was October 31, pro se plaintiffs are typically afforded three extra days to account for mailing time, as they are not permitted to electronically file. Accordingly, Plaintiff's amended complaint, filed November 1, was not untimely. The Clerk is **DIRECTED** to **TERMINATE** Plaintiff's motion for an extension of time [Doc. 10] as **MOOT**.

[3] These are the titles Plaintiff identified for each defendant in her amended complaint.

child's foot, the doctor left the room but Plaintiff and her son stayed. Plaintiff claims she waited "for hours," until Defendant Barbara Mason Marshall, a Child Protective Services ("CPS") worker, arrived [*id.* at Page ID # 33, ¶¶ 37-39].[4] Defendant Marshall informed Plaintiff her son was believed to have been abused. Plaintiff claims she tried to explain that the water in her apartment ran extremely hot, but Defendant Marshall was "very rude and did not attempt to listen to anything Plaintiff exclaimed." [*Id.* ¶ 39].

Plaintiff stayed at the hospital with her son while Defendant Marshall and a Chattanooga Police Department ("CPD") detective went to her home [*id.* ¶¶40-41]. When they returned, Defendant Marshall informed Plaintiff her son would be removed from her custody. Plaintiff claims Defendant Ray Neal, a DCS attorney, gave Defendant Marshall the "green light" to do so. Because DCS could not find proper placement for the child at that time, Plaintiff was allowed to stay in the hospital with her son [*id.* at Page ID # 34, ¶ 43]. On May 5, 2002, two other CPS workers and another CPD officer came to the hospital and left with the child [*id.* ¶ 45]. Plaintiff claims Defendant Marshall then filed an "Affidavit of Reasonable Efforts, Protective Custody and Petition for Temporary Custody" for the emergency removal of all four of Plaintiff's children from her custody, which affidavit Plaintiff claims is "malicious and perjured testimony [and] fabricated evidence." [*Id.* at Page ID # 35, ¶ 48]. DCS drafted permanency plans for the children and removed them from Plaintiff's custody; meanwhile Plaintiff began receiving counseling and taking parenting classes [*id.* ¶ 50].

Plaintiff gave birth to her fifth child on July 7, 2002. After two days in the hospital with Plaintiff, the child was removed from Plaintiff's custody, based on an affidavit completed by a

---

[4] According to the amended complaint, Plaintiff knew Defendant Marshall personally; Defendant Marshall had been in a relationship with and had a child with Plaintiff's late cousin [Doc. 11 at Page ID # 33, ¶ 39].

different CPS caseworker. Plaintiff claims that DCS refused to place the child in the custody of the child's father, who is also Plaintiff's husband [*id.* at Page ID # 36, ¶ 52]. Weeks later, Plaintiff was charged with attempted aggravated child abuse [*id.* ¶ 54]. Plaintiff claims she "had no criminal history before 'CPS' and 'DCS' invaded and destroyed [her] entire life and marriage." [*Id.*]. She received a suspended ten-year sentence and was required to complete anger management and parenting classes [*id.* ¶ 56].

Plaintiff had four more children—born on or around April 17, 2004; April 23, 2005; May 30, 2006; and November 24, 2007—all of whom were removed from Plaintiff's custody at birth. Plaintiff claims petitions from her family members to exercise custody over the children were "repeatedly denied," and that despite her successful completion of the children's permanency plans, Defendants Marshall, Neal, and Jackie Thomas, a DCS social worker, did not allow her appropriate visitation and "made sure reunification was not assured." [*Id.* at Page ID # 36, ¶ 57; Page ID # 37, ¶¶ 66, 68]. Eventually, DCS and CPS filed petitions to terminate Plaintiff's parental rights as to all nine children. According to Plaintiff, the order terminating Plaintiff's rights to her ninth child was entered on May 25, 2009 [*id.* at Page ID # 39, ¶ 76]. Plaintiff filed the instant suit over nine years later, on October 1, 2018 [Doc. 1].

## II. STANDARDS

As explained in the prior order, the court is responsible for screening all actions filed by plaintiffs, including non-prisoners seeking *in forma pauperis* status, and dismissing any action or portion thereof which is frivolous or malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (citing 28 U.S.C. § 1915(e)(2)) (other citations omitted), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Johns v. Maxey*, No. 2:07-CV-238, 2008 WL 4442467, at *1 (E.D. Tenn. Sept. 25, 2008) (Greer, J.) (citations omitted).

The standard required by § 1915(e)(2) to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citations omitted). The pleadings of pro se litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citations omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," otherwise it is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In order to survive a motion to dismiss, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* at 555 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)) (other citations omitted). There must be more than a "sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358-59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at

5

678).

**III. ANALYSIS**

Plaintiff's amended complaint is broken into three "causes of action," all asserted under 42 U.S.C. § 1983 and the 14th Amendment to the United States Constitution. Under a section titled, "General Allegations – Principals & USC Violations," Plaintiff also claims Defendants violated 42 U.S.C. § 1985 and a host of federal criminal statutes [Doc. 11 at Page ID # 28-31, ¶¶ 15-27]. In the first cause of action, Plaintiff claims Defendants were grossly negligent "in failing to fulfill their responsibilities and duties required by state law," in violation her due process rights [*id.* at Page ID # 41-43, ¶¶ 94-102]. In the second cause of action, Plaintiff alleges Defendants "aided and abetted" violations of her due process rights [*id.* at Page ID # 43-44, ¶¶ 103-09], and in the third, she claims Defendants discriminated against her and others based on their socioeconomic class and status as non-lawyers in violation of the Equal Protection Clause of the 14th Amendment [*id.* at Page ID # 44-45, ¶¶ 110-15]. She seeks punitive damages, an award for the "cost of litigation," and unspecified "appropriate declaratory and injunctive relief" [*id.* at Page ID # 45]. Liberally construed, she names Defendants Hommrich, Marshall, Thomas, and Neal in their individual and official capacities [*see, e.g.*, *id.* at Page ID # 29, ¶ 14 ("Plaintiff cites Ex Parte Young, regarding claims against state officials in their individual capacities for violations of federal constitutional or statutory rights committed during official duties.")].

**A.      42 U.S.C. § 1983 Claims**

Section 1983 does not have its own statute of limitations. Instead, courts must apply "the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). In

6

Tennessee, the application limitations period is one year. Tenn. Code Ann. § 28-3-104(a); *Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016) (citing *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tenn.*, 796 F.2d 879, 883 (6th Cir. 1986)). If "it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed," the complaint must be dismissed. *Howell*, 655 F. App'x at 350 (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)). The one-year limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson*, 510 F.3d at 635 (citing *Kuhnle Bros.*, 103 F.3d at 520). Courts look to "what event should have alerted the typical lay person to protect his or her rights." *Id.* (quoting *Kuhnle Bros.*, 103 F.3d at 520) (other citations omitted).

Plaintiff clearly should have been aware of her claims when her parental rights were terminated; probably earlier. As mentioned, Plaintiff states in her complaint that her parental rights were terminated as to her last child on May 25, 2009 [Doc. 11 at Page ID # 39, ¶ 76]. The only allegation Plaintiff makes regarding the time period after May 2009 is her claim that during a meeting on July 17, 2017, Defendant Thomas quoted DCS caseworkers as stating Plaintiff's family members "all had attitudes." [*id.* at Page ID # 37, ¶ 65].[5] Any claim arising from this incident, if Plaintiff is even trying to assert one, would also be barred because Plaintiff did not file her complaint until October 1, 2018.

Caselaw does allow for the delayed accrual of a claim in the event of a "continuing violation," *see Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999), but this doctrine cannot save Plaintiff's § 1983 claims in this case. To establish a continuing violation, a

---

[5] Plaintiff filed an affidavit allegedly transcribing this entire conversation on November 14, 2018 [Doc. 13].

plaintiff must establish the following three conditions:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern . . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Id.* (citation omitted). A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* at 940 (citation omitted). "Passive inaction . . . does not support a continuing violation theory." *Id.*

At best, Plaintiff's complaint could be construed as indicating passive inaction after 2009, in the form of Defendants' failure to return Plaintiff's children to her custody or revoke the termination of her parental rights. *See Eidson v. Tenn. Dep't of Children's Servs.*, 477 F. Supp. 2d 923, 926 (E.D. Mich. 2007) ("It is clear that simply retaining the children in the State's custody without filing a custody petition is not alone sufficient to establish a continuing violation." (citing *Minow v. Tennessee*, 191 F.3d 452, 1999 WL 776307 (6th Cir. 1999) (claims not saved by doctrine of continuing violations where child's initial placement in foster care was outside the limitations period, even if child remained in foster care during the limitations period)), *aff'd*, 510 F.3d 631 (6th Cir. 2007); *see also Tolbert*, 172 F.3d at 940-41 (adherence during limitations period to policy first implemented by Ohio DOT outside of limitations period does not constitute continuing violation where the policy is not "systematically and repeatedly revisited"). Accordingly, Plaintiffs § 1983 claims should be **DISMISSED**.

### C. 42 U.S.C. § 1985(3) Claims

Section 1985(3)[6] prohibits "private conspiracies intended to prevent persons or classes of persons from the equal exercise of any of their civil rights." *See United Bhd. of Carpenters and*

---

[6] Neither Subsection (1) ("Preventing officer from performing duties"), nor subsection (2) ("Obstructing justice; intimidating party, witness, or juror") of § 1985 is applicable in this case.

*Joiners, Local 610 v. Scott*, 463 U.S. 825, 840-411 (1983). "No violation of an independent legal right is required; nor does § 1985(3) require state action or the involvement of the State in any other way." *Scott*, 463 U.S. at 841. To successfully pursue a claim under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Scott*, 463 U.S. at 828-29 (citation omitted). The United States Court of Appeals for the Sixth Circuit has held that § 1983(5) "only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)) (other citation omitted). Plaintiff does not claim she was treated differently based on her assertion of certain fundamental rights; rather, she claims she was treated differently due to her "socio-economic status" and membership in "a class of persons who are not engaged in the legal profession." [Doc. 11 at Page ID # 44, ¶¶ 111-13].

"A 'class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender.'" *Jezowski v. Thompson*, No. 1:16-cv-13242, 2018 WL 3060250, at *6 (E.D. Mich., May 18, 2018) (quoting *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994)). The conspiracy must be "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]'" *Haverstick*, 32 F.3d at 993-94 (alteration in original) (quoting *Scott*, 463 U.S. at 829). Clearly, neither of the classes Plaintiff identifies qualifies for protection under § 1985(3).

Moreover, "conspiracy claims must be pled with some degree of specificity[,] and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim." *Curtis v. Breathitt Cty. Fiscal Court*, No. 18-5180, 2018 WL 6012328, at *4 (6th Cir. Nov. 15, 2018) (alteration in original) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). While Plaintiff vaguely alleges Defendants "routinely deny due process" to people in the classes she identifies [Doc. 11 at Page ID # 44, ¶ 113], her amended complaint contains no material facts regarding Defendants' interactions with anyone but herself, nor does it describe any general discriminatory policies or practices.

For these reasons, I **FIND** Plaintiff's § 1985(3) claims should be **DISMISSED**.

### D. Claims Based on Title 18 of the United States Code—Crimes and Criminal Procedure

In a section titled, "General Allegations – Principals & USC Violations," Plaintiff cites a number of federal criminal statutes seemingly as further bases for her claims [Doc. 11 at Page ID # 30-31, ¶¶ 17-27]. Even assuming these statutes are remotely concerned with the behavior Plaintiff complains about in her amended complaint, "the general rule is that a private right of action is not maintainable under a criminal statute." *Am. Postal Workers Union v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973). "Since the late 1970s, Congress has been on notice that, if it intends to create a private right of action, it had better do so expressly in the statute." *Cline v. Rogers*, 87 F.3d 176, 182 (6th Cir. 1996) (collecting cases).

Turning to the specific statutes Plaintiff cites, 18 U.S.C. § 1346 simply defines "scheme or artifice to defraud," and the Sixth Circuit has held it does not provide for a private right of action. *Young v. Overly*, No. 17-6242, 2018 WL 5311408, at *2 (6th Cir. July 2, 2018) (citations omitted). The Sixth Circuit has also held 18 U.S.C. § 1341, which prohibits mail fraud, does not create a private right of action. *Beverly v. Beverly*, No. 17-3919, 2018 WL 1176508, at *1 (6th Cir. Jan.

30, 2018) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). This Court has held that 18 U.S.C. § 1512, which prohibits tampering with a witness, victim, or an informant, does not create a private right of action. *Parton v. Smoky Mountain Knife Works, Inc.*, No. 3:10-CV-436, 2011 WL 4036959, at *12 (E.D. Tenn. Sept. 12, 2011) (collecting cases). There is also persuasive authority holding that 18 U.S.C. § 1951 & 1952, which prohibit robbery, extortion, and the use of the mail or interstate travel for the purpose of engaging in criminal activity, also do not provide a private right of action. *Hopson v. Shakes*, No. 3:12CV-722-M, 2013 WL 1703862, at *2 (W.D. Ky. Apr. 19, 2013) ("Federal courts have consistently found that the Hobbs Act [§ 1951] does not support a private cause of action." (internal quotation marks omitted; collecting cases)); *see also Reilly v. Levin*, No. 1:15-cv-00429-EJL-CWD, 2015 WL 13236640, at *9 (D. Idaho Dec. 18, 2015) ("Courts considering civil actions based upon 18 U.S.C. § 1952 have resoundingly concluded that it is a criminal statute that grants no explicit private right of action." (collecting cases)). There is also persuasive authority holding that 18 U.S.C. § 2 does not provide a private right of action. *Hooker v. Hooker*, No. 11-cv-2252-JTF-tmp, 2015 WL 542142, at *3 (W.D. Tenn. Jan. 23, 2015) (citation omitted), *report and recommendation adopted*, No. 2:11-cv-02252-JTF-tmp, 2015 WL 542158 (W.D. Tenn. Feb. 10, 2015).

Some of these statutes do address conduct that is privately actionable under 18 U.S.C. § 1964, the civil remedy section of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). RICO civil actions, however, have a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Accordingly, any such claim would be time-barred. RICO includes 18 U.S.C. §§ 1961 ("Definitions") and 1962 ("Prohibited activities"), and therefore to the extent Plaintiff is attempting to assert claims under these statutes, the same four-year statute of limitations would bar such claims.

## IV. CONCLUSION

I **FIND** Plaintiff's § 1983 claims are time-barred, and Plaintiff's § 1985(3) claims are without merit. I also **FIND** Plaintiff has failed to show she is entitled to relief under any of the cited criminal statutes. Accordingly, I **RECOMMEND**[7] this action be **DISMISSED** in its entirety prior to the issuance of any summons.[8]

                                                  s/ *Susan K. Lee*
                                                  SUSAN K. LEE
                                                  UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[8] The Clerk is **DIRECTED** to **TERMINATE** Plaintiff's motion for an extension of time [Doc. 10] as **MOOT**. *See* note 2, above.